IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

IAN MCLEAN, as personal representative of the estate of CHARLES Y. MCLEAN,

Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendant.

Case No. 1:17-cv-00765-CL

OPINION & ORDER

CLARKE, Magistrate Judge.

Before the Court is Plaintiff's Motion for Partial Summary Judgment (#39) and Defendant's Motion for Summary Judgment (#41). For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.[1]

---

[1] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

Page 1 of 11 – OPINION & ORDER

## BACKGROUND

In 2008, Charles McLean borrowed approximately $260,000 from Financial Freedom Senior Funding Corporation ("Financial Freedom") pursuant to a home equity conversion mortgage loan (more commonly referred to as a reverse mortgage). The loan was evidenced by a promissory note that Mr. McLean signed in favor of Financial Freedom and the Note was secured by a Deed of Trust against his home. The Note was indorsed in blank by Financial Freedom and the Deed of Trust was recorded in Jackson County. The Note provided that Financial Freedom and its successors and assigns may require immediate payment in full of the entire amount owing upon (a) Mr. McLean's death; (b) Mr. McLean's sale of the property; or (c) Mr. McLean's failure to perform a loan obligation. The reverse mortgage did not require Mr. McLean to make monthly interest or principal payments, but Mr. McLean was obligated to pay property taxes and maintain hazard insurance. The loan was insured and regulated by HUD, which gives lenders and loan servicers clear mandates when borrowers default on their reverse mortgage loans.

Approximately two weeks after the origination of Mr. McLean's loan, Financial Freedom sold the loan to defendant, Federal National Mortgage Association ("Fannie Mae"), but Financial Freedom retained the servicing rights. The sale of the loan to Fannie Mae was never recorded. When Fannie Mae purchased the loan, the original Note and collateral file for the loan was deposited with the document custodian Deutsche Bank National Trust Company ("Deutsche Bank"). Deutsche Bank retained physical custody of the Note until October 29, 2015.

On September 25, 2009, Financial Freedom recorded a document titled "Corporate Assignment of Deed of Trust" to Mortgage Electronic Registration System, Inc. ("MERS") as "nominee" for Financial Freedom Acquisition LLC (the legal entity that succeeded Financial

Freedom Senior Funding Corp.). In November 2015, MERS executed and recorded a document also titled "Assignment of Deed of Trust" to CIT Bank. According to various declarations submitted by Defendant, Financial Freedom was a division of CIT Bank that handled reverse mortgage loans, and CIT Bank serviced loans for Fannie-Mae. CIT Bank obtained physical custody of the Note and the collateral file for the loan on October 30, 2015 and maintained physical possession of these documents at all relevant times during the foreclosure. Kala Decl. ¶ 7, Ex. G at FNMA001246; Larkins Decl. ¶ 3, Ex. B at 47:24-49: 17.

Mr. McLean paid his property taxes and insurance from the origination of the loan in 2008 until 2010, when he applied for and received the right to defer his taxes under Oregon's property tax deferral program for low-income seniors and disabled people. However, Mr. McLean did not recertify his eligibility for the deferral program and his property taxes went unpaid thereafter. Additionally, Mr. McLean failed to timely renew his hazard insurance, requiring the loan servicer to place insurance on the property, for which it was never reimbursed. Fannie Mae's loan servicers first notified Mr. McLean that his loan was in jeopardy for failure to pay property charges in July 2015. Approximately one month later, CIT Bank sent Mr. McLean a letter informing him that his reverse mortgage was in default and provided options to cure. In September 2015, CIT Bank submitted a "Due and Payable" package to HUD, as required by regulation, and HUD called the loan due and payable. From October 2015 to February 2016, CIT Bank and Mr. McLean spoke on at least six separate occasions regarding his default and his options to avoid foreclosure.

On January 29, 2016, CIT Bank appointed Mr. Smith as Successor Trustee. In March, the Successor Trustee issued and recorded the Trustee's Notice of Sale and Notice of Default and Election to Sell. After the issuance of the Notice of Sale, CIT Bank informed Mr. McLean that

foreclosure would be avoided if he paid $3,194.34 before the public auction set for July 22, 2016. Because Mr. McLean did not cure his default, the property was sold at the trustee's sale to Fannie Mae as the only bidder. The Successor Trustee issued a trustee's deed in Fannie Mae's name and it was recorded on October 14, 2016.

Mr. McLean remained in his home after the sale was completed. In February 2017, Fannie Mae filed a Forcible Entry and Detainer Complaint in Jackson County Circuit Court. Mr. McLean filed the instant action in April 2017, challenging the validity of the foreclosure sale, and Defendant removed the action to this Court. The parties ultimately agreed to dismiss the state court eviction action in favor of resolving their disputes in the instant case. Mr. McLean retained possession of the property and lived there until his death at age 93 in January 2018. Mr. McLean's estate, which replaced him as plaintiff after his passing, now moves this court for partial summary judgment on the narrow issue of whether the foreclosure process was in violation of the Oregon Trust Deed Act. Fannie Mae moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d

796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff moves for partial summary judgment on the issue of whether the foreclosure of Mr. McLean's property was conducted in compliance with the Oregon Trust Deed Act ("OTDA"). On this issue, Plaintiff claims that the trustee's sale and resulting deed are void because (1) there was an unrecorded assignment of the Deed of Trust in violation of the OTDA, ORS 86.752(1), specifically the assignment from Financial Freedom to Fannie Mae; and (2) the Successor Trustee was not validly appointed, so therefore could not carry out the sale.

Defendant moves for summary judgement on all claims. The additional claims at issue on Defendant's motion are Plaintiff's claim for financial abuse of an elder under ORS 124.100, *et seq.* and claim for declaratory judgment/quiet title under ORS 20.010. The Court will address each claim separately.

## I. Unrecorded Assignment of the Deed of Trust

Plaintiff seeks to invalidate the foreclosure based on Defendant's failure to record an assignment of the Deed of Trust, as required by the OTDA, ORS 86.752(1). This type of post-sale challenge is barred by ORS 86.797.

Oregon law "does not mandate strict compliance with every provision of the OTDA for a trustee's sale to be valid." *DiGregorio v. Bayview Loan Servicing, LLC*, 381 P.3d 961, 965-67 (Or. Ct. App. 2016). The OTDA's finality provisions require that a post-sale challenge be "based on lack of notice or some other fundamental flaw in the foreclosure proceedings, such as the sale being completed without the borrower actually being in default." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1166 (9th Cir. 2016) (barring a post-sale challenge based on the trustee's sale notice listing of the wrong beneficiary); *Eslami v. Fannie Mae*, 691 Fed. Appx. 379, 380 (9th Cir. 2017) (barring a post-sale challenge based on the failure to record an assignment of the Deed of Trust). When a plaintiff alleges only a "technical defect" under the OTDA, rather than "violations of subsections that grant substantive rights," his post-sale claim is barred by ORS 86.797. *See Woods*, 831 F.3d at 1166.

Plaintiff does not dispute that Mr. McLean was in default, that he received notice of the foreclosure, or that CIT Bank communicated with him several times about his options in an attempt to cure his default. There is no evidence that the unrecorded assignment to Fannie Mae prejudiced Mr. McLean or impacted his ability to avoid foreclosure. Therefore, this post-sale challenge for failure to record an assignment is the type of "technical defect" barred by ORS 86.797. And perhaps more importantly, as will be discussed in the next section, CIT Bank's authority to foreclose flowed from its possession of the Note rather than from any unrecorded or recorded written assignment of the Deed of Trust.

## II. Appointment of the Successor Trustee

The OTDA requires that a trustee's sale be carried out by the trust deed's original trustee or a validly-appointed successor trustee. ORS 86.797. The Oregon Supreme Court has explained that "the beneficiary [of the trust deed] has absolute authority to appoint a successor trustee at any time after a trust deed is executed." *Niday v. GMAC Mortgage, LLC*, 353 Or. 648, 666 (2013). Plaintiff argues that because CIT Bank was never the beneficiary of the trust deed, it had no authority to appoint the Successor Trustee, and therefore, the actions taken by the Successor Trustee in this case are void. The critical inquiry in this case, then, is who was the beneficiary of the Deed of Trust when the Successor Trustee was appointed?

The Oregon Supreme Court held for the purposes of ORS 86.752(1), then numbered ORS 735(1), the "beneficiary" to a deed of trust is the person entitled to payment under the promissory note and the deed of trust that follows it. *Brandrup v. Recontrust Co., N.A.*, 353 Or. 668, 673-74 (2013). A "person entitled to enforce an instrument" is defined by ORS 73.0301 as "the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument." Under ORS 73.0203(2), "[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." A transfer occurs when an instrument "is delivered by a person other than its issuer for the purpose of giving the person receiving delivery the right to enforce the instrument." ORS 73.0203(1).

The Oregon Supreme Court also affirmed the longstanding principal that when a promissory note changes hands, the securing deed of trust follows by operation of law. *Brandrup*, 353 Or. at 694. Courts in this district have found this to mean that the person who holds the note is the person entitled to enforce the note, and the person entitled to enforce the

note is the beneficiary entitled to appoint a successor trustee. *See Romani v. Northwest Trs. Servs.*, 2013 U.S. Dist. LEXIS 173700, at *7 (D. Or. Dec. 12, 2013) ("Wells Fargo, as holder of the Note, possessed the right to appoint a successor trustee and to take all of the other actions necessary to initiate the non-judicial foreclosure."); *Aazami v. Wells Fargo Bank, N.A.*, 2018 WL 738930, at *3 (D. Or. Feb. 6, 2018) ("[W]hen a promissory note is transferred, the Deed of Trust also 'transfers by operation of law and the party entitled to payment under the Note is the beneficiary notwithstanding the designation of MERS as the beneficiary in the Deed of Trust.'"). The Court in *Aazami* relied on the holding from *LNV Corp. v. Fauley* in deciding who was the beneficiary of a trust deed when the chain of title was "muddled." *LNV Corp. v. Fauley* held

> [T]he fact that a trust deed and Note have taken divergent paths is entirely inapposite. There is no question that the Note has been transferred to LNV by indorsement, and that LNV is in current possession of the Note. Therefore, LNV is the entity entitled to repayment of the Note obligation, and, in turn, LNV is the beneficiary of the trust deed, irrespective of its "muddled" chain of title.

178 F. Supp. 3d 1043, 1048 (D. Or. 2016).

Plaintiff asserts that Defendant has not established that CIT Bank was in possession of the Note at the time it appointed Mr. Smith as Successor Trustee. Defendant filed the Declaration of Dion Kala (#44) in support of its motion for summary judgment. Kala testified in his Declaration that he was the Vice President of CIT Bank, and that at the time the property was foreclosed, he was the Records Custodian for CIT Bank. Kala testified that

> "I had access to the Servicers' business records involving the Loan, and . . . [i]n the regular performance of my job functions, I have reviewed these

business records. These records are made at or near the time of events or activities reflected in such records by, or from information provided by, persons with knowledge of the activities and the transactions reflected in the records. It is the regular practice of the Servicers to maintain these business records . . . . I have personally examined the Servicers' business records relating to the Loan."

Kala Decl. ¶ 2. Kala further testified that "On October 15, 2015, CIT Bank requested that Deutsche Bank deliver the Loan's collateral file to CIT Bank, including the original Note. . . . CIT Bank received these documents on October 30, 2015. CIT Bank maintained physical possession of the original Note until October 18, 2017." Kala Decl. ¶ 8. The record shows that CIT Bank appointed the Successor Trustee on January 29, 2016, approximately three months after receiving the original Note. Kala Decl. ¶ 9, Ex. I at FNMA 000190.

Additionally, the Note was indorsed in blank by the original payee Financial Freedom. Kala Decl. ¶ 3, Ex. A. Plaintiff argues that Financial Freedom could not have been the Note's holder at the time of the indorsement because Financial Freedom's parent company, IndyMac Bank, F.S.B, was closed by the Office Thrift Supervision and had ceased operating under that name on or after July 11, 2008. However, Plaintiff does not argue that Financial Freedom lacked the authority or ability to assign the Deed of Trust to Fannie Mae. In fact, Plaintiff places great emphasis on the unrecorded assignment to Fannie Mae, which also happened after July 11, 2008. If Financial Freedom was capable of entering into the Loan with Mr. McLean, pay him hundreds of thousands of dollars pursuant to the agreement, and sign the assignment of the Deed of Trust to Fannie Mae—all after July 11, 2008—it could not have been powerless to indorse the Note.

On this record the Court concludes Defendant has established that CIT Bank was in physical possession of the Note at the relevant times and, therefore, was the person entitled to enforce the Note and Deed of Trust. As in *Romani* and *Aazami*, the purported assignment of the Deed of Trust by MERS is a "legal nullity" and the unrecorded assignment to Fannie Mae does present a similar issue with the chain of title, but, nevertheless, CIT Bank as the person entitled to enforce the Note possessed the right to appoint the Successor Trustee and take all other actions necessary to initiate the nonjudicial foreclosure. Accordingly, Plaintiff has not provided a basis for declaring the trustee's sale and resulting trust deed void. Defendant is entitled to judgment on Plaintiff's OTDA claims as a matter of law.

### III. Elder Abuse Claim

A claim for financial abuse of an elder requires proof of (1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful. ORS 124.110; *Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003). Although the statute does not define "wrongful," Oregon courts interpreting it have found conduct to be wrongful if it is carried out in pursuit of an improper motive or by improper means. *Woods*, 77 P.3d at 1153. Plaintiff's claim for financial abuse of an elder is premised entirely on its allegation that the property was sold in violation of the OTDA. Because the Court finds that the property was not sold in violation of the OTDA, and therefore not taken wrongfully, the Court concludes that Defendant is entitled to judgment on this claim as a matter of law.

### IV. Declaratory Judgment/Quiet Title Claim

In a quiet title action, a plaintiff must prove that he has a substantial interest in, or claim to, the disputed property and that his title is superior to that of others. *Howe v. Greenleaf*, 320

P.3d 641, 646 (Or. Ct. App. 2014). A borrower who seeks to quiet title against his lender must tender payment of the full amount of the debt owed in order to have a superior interest in the title. *See Swango v. Nationstar Sub1, LLC*, 292 F. Supp. 3d 1134, 1144 (D. Or. 2018) (dismissing quiet title claim because plaintiff failed to allege she had tendered payment of the outstanding debt).

In its response brief, Plaintiff concedes that it does not seek to eliminate the Loan. As a result, Plaintiff does not assert a true quiet title claim, but instead a claim for declaratory judgment that the trustee's sale is void to show that the record owner of the property is Mr. McLean (now, his estate). Because the property was not sold in violation of the OTDA, the Court concludes that Defendant is entitled to judgment on this claim as a matter of law.

## ORDER

For the reasons stated above, Plaintiff's motion for partial summary judgment (#39) is DENIED and Defendant's motion for summary judgment (#41) is GRANTED.

It is so ORDERED and DATED this 3 day of January, 2019.

MARK D. CLARKE
United States Magistrate Judge